# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

### No.  13-3336

---

| | |
|---|---|
| MARSHALL G. WELTON,<br><br>Plaintiff-Appellant,<br><br>vs.<br><br>OFFICER SHANI J. ANDERSON, individually,<br>THE NATIONAL BANK OF INDIANAPOLIS<br>CORPORATION, and GEORGE E. KEELY,<br><br>Defendants-Appellees. | Appeal from U.S. District Court<br>Southern District of Indiana<br>No. 1:13-cv-00355-JMS-MJD<br><hr>Hon. Magnus-Stinson<br>United States District Judge |

---

### APPELLANT'S BRIEF

---

Hamid R. Kashani, Attorney No. 11225-49
445 N. Pennsylvania Street, Suite 288
Indianapolis, Indiana  46204
(317) 632-1000
(317) 536-3312 (fax)
HKashani@KashaniLaw.com

*Attorney for Plaintiff-Appellant*

## Circuit Rule 26.1 Disclosure Statement

Pursuant to Circuit Rule 26.1, counsel for Plaintiff-Appellant Marshall G. Welton states as follows:

1.   The full name of every party that the undersigned attorneys represented in this case is: Marshall G. Welton.

2.   The names of all law firms and the partners and associates that appeared for the party now represented by us in the trial court or are expected to appear in this Court are: Hamid R. Kashani.

3.   The parent corporations and any publicly held companies that own ten percent or more of the stock of the party represented by the attorneys: N/A.

/s/Hamid R. Kashani
Hamid R. Kashani, Attorney No. 11225-49
445 N. Pennsylvania Street, Suite 288
Indianapolis, Indiana  46204
(317) 632-1000
(317) 536-3312 (fax)
HKashani@KashaniLaw.com

*Counsel of Record*
*Plaintiff-Appellant Marshall G. Welton*

# Table of Contents

Circuit Rule 26.1 Disclosure Statement ................................................................iii

Table of Authorities ................................................................................................iii

Jurisdictional Statement ........................................................................................ 1

Issues Presented .................................................................................................... 2

Statement of the Case ............................................................................................ 3

Summary of Argument .......................................................................................... 13

Standard of Review ............................................................................................... 14

Argument ............................................................................................................... 14

    I.   Welton's malicious prosecution claim against Detective Anderson is cognizable under the fourteenth amendment's due process clause because Indiana Tort Claims Act absolutely immunizes police officers from liability under Indiana's common law tort of malicious prosecution............................................. 14

    II.  Welton's amended complaint adequately states a malicious prosecution claim against Detective Anderson under the fourteenth amendment. ........................................ 17

    III. Welton's malicious prosecution claim against Detective Anderson is cognizable under the fourth amendment.................................................. 22

Conclusion ............................................................................................................. 26


Certificate of Compliance ..................................................................................... 27

Certificate of Service ............................................................................................ 277

Short Appendix ...................................................................................... A-1 to -25[*]

    Certificate under Cir. Rule 30(d) ......................................................................A-ii

---

[*] References to the Short Appendix are denoted as "A. __" followed by the page number. References to the district court record are denoted as "R. __" followed by docket number.

# Table of Authorities

**Cases:**

Albright v. Oliver, 510 U.S. 266 (U.S. 1994) .............................................................. 24

Alexander v. McKinney, 692 F.3d 553 (7th Cir. 2012) ................................................ 14

Belcher v. Norton, 497 F.3d 742 (7th Cir. 2007) ................................................... 16, 17

Bielanski v. County of Kane, 550 F.3d 632 (7th Cir. 2008) .................................... 15, 23

Bontkowski v. Smith, 305 F.3d 757 (7th Cir. 2002) ..................................................... 15

Castellano v. Fragozo, 352 F.3d 939 (5th Cir. 2003) ................................................... 22

City of New Haven v. Reichhart, 748 N.E.2d 374 (Ind. 2001) ............................... 15, 20

Darrah v. City of Oak Park, 255 F.3d 301  (6th Cir. 2001) ..................................... 22, 24

Donahue v. Gavin, 280 F.3d 371 (3d Cir. Pa. 2002) .................................................... 22

Easter House v. Felder, 910 F.2d 1387 (7th Cir. 1990) ................................................ 16

Estate of Smith v. Marasco, 318 F.3d 497 (3d Circ. 2003) .......................................... 23

Fox v. DeSoto, 489 F.3d 227 (6th Cir. 2007) ............................................................... 24

Harrington v. City of Nashua, 610 F.3d 24 (1st Cir. 2010) .......................................... 24

Ienco v. City of Chicago, 286 F.3d 994 (7th Cir. 2002) ............................................... 20

Johnson v. Saville, 575 F.3d 656 (7th Cir. 2009) ........................................................ 23

Julian v. Hanna, 732 F.3d 842 (7th Cir. 2013) ..................................................... passim

Killingsworth v. HSBC Bank Nev., N.A., 507 F.3d 614 (7th Cir. 2007) ..................... 14

Lambert v. Williams, 223 F.3d 257 (4th Cir. 2000),

     cert. denied, 531 U.S. 1130 (2001) ..................................................................... 22, 23

Livingston v. Consolidated City of Indianapolis, 398 N.E.2d 1302 (Ind. App. 1972) ................ 15

Lopez v. City of Chicago, 464 F.3d 711 (7th Cir. 2006) ............................................... 23

Luck v. Rovenstine, 168 F.3d 323 (7th Cir. 1999) ....................................................... 23

Mahoney v. Kesery, 976 F.2d 1054 (7th Cir. 1992) ..................................................... 21

McCullah v. Gadert, 344 F.3d 655 (7th Cir. 2003) .......................................... 14, 20, 26

Moran v. Clarke, 296 F.3d 638 (8th Cir. 2002) ........................................................... 22

Newsome v. McCabe, 256 F.3d 747 (7th Cir. 2001) ....................................... 15, 16, 23

Novitsky v. City of Aurora, 491 F.3d 1244 (10th Cir. 2007) ....................................... 20

Parish v. City of Chicago, 594 F.3d 551 (7th Cir. 2009) .............................................. 15

Parratt v. Taylor, 451 U.S. 527 (1981) ........................................................................ 25

Penn v. Harris, 296 F.3d 573 (7th Cir. 2002) .............................................................. 18

Poppell v. City of San Diego, 149 F.3d 951 (9th Cir. 1998) ........................................ 22

Ray v. City of Chicago, 629 F.3d 660 (7th Cir. 2011),

     cert. denied, 2011 U.S. LEXIS 6673 (U.S., Oct. 3, 2011) ................................... 15, 18

Reed v. City of Chicago, 77 F.3d 1049 (7th Cir. 1996) ................................................ 23

Savory v. Lyons, 469 F.3d 667 (7th Cir. 2006) ........................................................... 14

<u>Serino v. Hensley</u>, 735 F.3d 588 (7th Cir. Nov. 4, 2013) ............................................................ 14

<u>Thacker v. City of Columbus</u>, 328 F.3d 244 (6th Cir. 2003)........................................................ 22

<u>Tully v. Barada</u>, 599 F.3d 591 (7th Cir. 2010) ...................................................................... 17, 18

<u>Uboh v. Reno</u>, 141 F.3d 1000 (11th Cir. 1998) .............................................................................. 23

<u>Wallace v. Kato</u>, 549 U.S. 384 n.2 (2007)........................................................................ 22, 23, 24

<u>Washington v. County of Rockland</u>, 373 F.3d 310 (2d Cir. 2004)................................................ 27

<u>Wilkins v. DeReyes</u>, 528 F.3d 790 (10th Cir. 2008) ................................................................ 23, 24

<u>Wood v. Kesler</u>, 323 F.3d 872 (11th Cir. 2003), <u>cert. denied</u>, 2003 U.S. LEXIS 6257
   (Oct. 6, 2003) ........................................................................................................................ 22, 23

## Constitutional Provisions:

U.S. Const. amend. IV ................................................................................................ passim

U.S. Const. amend. XIV .............................................................................................. passim

## Statutes:

28 U.S.C. § 1291............................................................................................................... 1

28 U.S.C. § 1331............................................................................................................... 1

28 U.S.C. § 1343............................................................................................................... 1

28 U.S.C. § 1367............................................................................................................... 1

42 U.S.C. § 1983............................................................................................... 1, 3, 21, 23

Ind. Code § 34-13-3-3(8) ......................................................................................... 15, 16

Ind. Code §§ 34-13-3-0.1 <u>et seq</u> ................................................................................... 15

Ind. Code §§ 34-13-3-5 ................................................................................................. 16

## Rules:

Fed. R. Civ. P. 12(b)(1)................................................................................................ 3, 4

Fed. R. Civ. P. 12(b)(6)................................................................................................ 4, 14

**Jurisdictional Statement**

1. <u>Jurisdiction of the District Court</u>.  Pursuant to 28 U.S.C. §§ 1331 & 1343, the district court had original jurisdiction to hear Plaintiff's claims under the fourth and fourteenth amendments against Defendant Detective Anderson, which were brought under 42 U.S.C. § 1983.  Pursuant to 28 U.S.C. § 1367, the district court had supplemental jurisdiction to hear Plaintiff's related state law claims, arising from the same nucleus of operative facts, against Defendants The National Bank of Indianapolis Corporation and George E. Keely.

2. <u>Jurisdiction of the Court of Appeals</u>.  Pursuant to 28 U.S.C. § 1291, the Court of Appeals has appellate jurisdiction over the ORDER and FINAL JUDGMENT PURSUANT TO FED. R. CIV. PRO. 58 entered in this action on September 19, 2013 (R. 62; A-3 & R. 63; A-1).

3. <u>Timeline</u>.

  (i)     The judgment below was entered on September 19, 2013 (R. 63; A-1).

  (ii)    No motion for a new trial or alteration of the judgment was filed.

  (iii)   The filing date of the notice of appeal is October 21, 2013.  This appeal is timely, because October 19th and 20th, 2013, were weekend days.

  (iv)    This appeal is not a direct appeal from a decision of a magistrate judge.

4. This appeal is from a final order and judgment that disposes of all parties' claims.

**Issues Presented**

1.  Whether Welton's malicious prosecution claim against Detective Anderson, an Indiana police officer, is cognizable under the fourteenth amendment's due process clause, where Indiana Tort Claims Act absolutely immunizes police officers from liability under Indiana's common law tort of malicious prosecution.[1]

2.  Whether the amended complaint adequately states a claim of malicious prosecution against Detective Anderson under the fourteenth amendment.

3.  Whether Welton's malicious prosecution claim against Detective Anderson is cognizable under the fourth amendment.[2]

---

[1] The pleadings and some papers mistakenly list Defendant Anderson's title as "Officer." Defendant Anderson's correct title is "Detective," and she is addressed as such here.

[2] Plaintiff-Appellant Welton acknowledges that this Court's numerous and recent precedents may preclude the recognition of an independent malicious prosecution claim under the fourth amendment but presents this argument to preserve the issue for further appeal.

**Statement of the Case**

I.  <u>Summary of Facts Relevant to the Issues Submitted for Review</u>.

1.  Welton alleges that defendant Detective Anderson violated his rights, under the due process clause of the fourteenth amendment and under the fourth amendment, by intentionally and maliciously presenting false information to the criminal court.  Welton alleges that Detective Anderson caused a criminal action to be instituted against him, that Detective Anderson acted maliciously, that Detective Anderson had no probable cause to institute the criminal action, and that the criminal action was terminated in Welton's favor.  Welton brought his claims pursuant to 42 U.S.C. § 1983.

2.  Welton also alleges Indiana state law claims of malicious prosecution against Defendants The National Bank of Indianapolis Corporation and George E. Keely [hereinafter NBI Defendants], arising from the same nucleus of operative facts, by invoking the district court's supplemental jurisdiction.

II.  <u>Procedural History</u>.

1.  On July 10, 2013, Plaintiff Welton filed his Amended Complaint and Jury Demand. (R. 34; A-13).  On July 19, 2013, Defendants filed a motion under Rule 12(b)(1), which they later sought to convert to a Rule 12(b)(6) motion, solely arguing that as a matter of law malicious prosecution claims against Indiana law enforcement officers are not cognizable under the fourth or fourteenth amendment, because Indiana recognizes the tort of malicious prosecution even though Indiana Tort Claims Act absolutely immunizes law enforcement officers from liability. (R. 35) (Defendants' motion); (R. 36) (supporting brief);  (R. 59) (reply brief)).

2.  Welton argued that this Court recognizes malicious prosecution claims under the due process clause of the fourteenth amendment, where state law does not provide a remedy for such

claims,  (R. 51, at 2-7), but admitted that this Court's numerous and recent precedents precluded the district court from recognizing an independent malicious prosecution claim under the fourth amendment.  (R. 51, at 7-10).

III. Ruling Presented for Review.

1.   On September 19, 2013, the district court ruled.  (R. 62; A-3 to -12).  The court discussed, but did not decide, the issue of whether malicious prosecution claims against Indiana police officers are cognizable under the due process clause of the fourteenth amendment because Indiana absolutely immunizes its police officers.  (R. 62, at 6; A-8).  Instead, the district court *sua sponte* dismissed the case for inadequacy of allegations in the amended complaint.  (R. 62, at 8; A-10).

2.   Because the district court dismissed Plaintiff's claims against Detective Anderson under Rule 12(b)(6), it declined to continue exercising supplemental jurisdiction over Welton's state law claims against NBI Defendants and dismissed Plaintiff's claims against them without prejudice.  (R. 62, at 10; A-12).  The viability of those state law claims was not the subject of the underlying motion to dismiss.

3.   Welton filed his notice of appeal on October 21, 2013.  October 19th and 20th, 2013, were weekend days.

IV. Facts

The allegations in the Amended Complaint and Jury Demand (R. 34; A-15 to -25) show as follows:

**(A)**

1.   Plaintiff Marshall Welton, 52, is an Indianapolis businessman.  He holds an MBA, and a J.D.   At all times relevant, Welton was engaged in buying, selling, and renting residential real estate.  <u>Amended Complaint and Jury Demand</u> ¶ 10 (A-15).

2.   Defendant Detective Shani J. Anderson is a police officer and detective with the Indianapolis Metropolitan Police Department.  <u>Id</u>. ¶ 5 (A-14).

3.   Defendant The National Bank of Indianapolis Corporation is an Indiana corporation with its principal place of business located in Indianapolis, Indiana.  It operates a bank under the name of National Bank of Indianapolis (NBI).  <u>Id</u>. ¶ 6 (A-14).

4.   At all times material, Defendant George E. Keely was Vice President of Loan Administration and Workout Manager for The National Bank of Indianapolis Corporation.  <u>Id</u>. ¶ 7 (A-14).

**(B)**

5.   To carry out his business of buying, selling, and renting residential real estate, Welton used lines of credit from National Bank of Indianapolis (NBI) and First Indiana Bank.  These lines of credit had to be collateralized.  Welton signed mortgages on the real estate to be accepted by the banks as collateral.  <u>Id</u>. ¶ 11 (A-15).  The banks required casualty insurance, an appraisal and a title search in order to support a mortgage against which funds could be advanced.  <u>Id</u>. ¶ 12 (A-15).

6.   Welton's contact point at NBI was Mr. Jason Boyewsky, NBI's Vice President of Commercial Lending.  Their business relationship began in 1994.  <u>Id</u>. ¶ 13 (A-15).

7.   Welton had a line of credit at NBI which was generally renewed annually.  In April 2002, the balance on the $750,000.00 line of credit at NBI was approximately $564,000.00.  <u>Id</u>. ¶ 14

(A-15).  At any one time, a plethora of properties collateralized Welton's NBI line of credit.  <u>Id</u>. ¶ 15 (A-15).

8.  As of April of 2002, Welton's line of credit at NBI was sufficiently collateralized.  <u>Id</u>. ¶ 16 (A-15).

9.  In March of 2002, Welton met with NBI and presented additional properties to the bank as possible collateral, in preparation for what he believed would have been a routine extension of his credit line.  At the time, Welton had presented at least six (6) additional properties to the bank.  <u>Id</u>. ¶ 17 (A-15 to -16) (enumerating the properties).

10. NBI did not extend Welton's line of credit.  Instead, NBI reduced the line of credit to the balance owed, at $564,000, and gave Welton about 90 days to pay off his account.  <u>Id</u>. ¶ 18 (A-16).

11. Even though the NBI had not granted any extension of the line of credit that would have utilized any of the six (6) additional properties as collateral, it went ahead and recorded mortgages on all six (6) properties.  <u>Id</u>. ¶ 19 (A-16).

12. Some of the six (6) additional properties were among nearly 50 additional properties that Welton presented towards the extension of his unrelated line of credit with First Indiana Bank.  <u>Id</u>. ¶ 20 (A-16).

13. Sometime after April of 2002, Welton fell on hard times and was unable to make payments on his lines of credit.  At the time, the NBI account carried a balance of approximately $560,000.00, and the First Indiana Bank account carried a balance of approximately $2,037,000.00, on a line of credit of approximately $5,000,000.00.  <u>Id</u>. ¶ 21 (A-16).

14. However, at least since sometime in 2001, Welton had never drawn or received any funds from his lines of credit at either NBI or First Indiana Bank.  <u>Id</u>. ¶ 22 (A-16).

15. In early 2006, Welton met with Jason Boyewsky, NBI's Vice President of Commercial Lending. Welton stated that he was recovering from his financial hardship and wanted to pay off his debt to NBI. They reached an agreement, requiring Welton to pay NBI at least $3,000.00 a month. Id. ¶ 23 (A-16).

16. Thereafter until August of 2007, Welton regularly sent monthly checks of at least $3,000.00 each to Mr. Boyewsky, who delivered each and every check to Defendant Keely, NBI's Vice President of Loan Administration. Id. ¶ 24 (A-17).

17. Defendant Keely never cashed Welton's checks, did not record them on NBI's records, and did not reduce the balance on Welton's account. Instead, he placed them in a drawer in his desk. Id. ¶ 25 (A-17).

18. After realizing NBI was not cashing his checks, on September 9, 2007, Welton sent a certified check to NBI for the amount of $80,000.00 to replace his uncashed checks and to prepay additional monthly payments to NBI. Id. ¶ 26 (A-17). By early 2008, Welton had fully paid NBI's line of credit together with interest, expenses, and substantial attorney's fees, for a total of nearly $700,000.00. Id. ¶ 28 (A-17).

**(C)**

19. On May 30, 2007, Detective Anderson signed, under the penalties for perjury, an Affidavit in Support of Probable Cause and an Information charging Welton with one count of theft, under Ind. Code § 35-43-4-2, and one count of fraud on a financial institution, under Ind. Code § 35-43-5-8, both as Class C felonies. Both documents were filed with Marion Superior

Court, Criminal Division, Room G04, under cause Number 49G04-0705-FC-097329.  Id. ¶ 29 (A-17).[3]

20. In her probable cause affidavit and the charging information, Detective Anderson intentionally presented false, material facts,  id. ¶ 30 (A-17 to A-18):

(a) Detective Anderson falsely testified that NBI had renewed Welton's $750,000 line of credit in June of 2002, where in fact NBI had advised Welton that it was terminating his line of credit instead of renewing it.  Id. ¶ 30(a) (A-18).

(b) Detective Anderson falsely testified that in June of 2002, Welton had received a $750,000 line of credit from NBI, where in fact NBI records showed that in the summer of 2002, NBI had terminated Welton's line of credit and had given him about 90 days to pay off the account.  Id. ¶ 30(b) (A-18).

(c) Detective Anderson falsely testified that in June of 2002, Welton was past due for renewal of his line of credit, where the records showed that by that time NBI had already decided not to renew Welton's line of credit.  Id. ¶ 30(c) (A-18).

(d) Detective Anderson falsely testified that in June of 2002, the collateral for Welton was short by $300,000, where NBI records showed that the line of credit was adequately collateralized.  Id. ¶ 30(d) (A-18).

(e) Detective Anderson falsely testified that in June of 2002, NBI had increased Welton's line of credit, where NBI records showed that NBI actually had substantially reduced Welton's line of credit by limiting it to its existing balance and was in process of terminating it.  Id. ¶ 30(e) (A-18).

---

[3] The underlying charges were the second of a series of three sets of charges filed by Detective Anderson against Welton over the years, all leading to dismissal or acquittal.  Complaint and Jury Demand ¶ 33, at 6 (R. 1).

(f) Detective Anderson falsely testified that in June of 2002, Welton had pledged the six (6) additional properties as collateral for his $750,000 "increased" line of credit, where NBI records showed that NBI did not increase Welton's line of credit and that NBI never granted any extension of the line of credit that would have utilized any of the six (6) additional properties as collateral.  Id. ¶ 30(f) (A-18).

(g) Detective Anderson falsely testified that on all six (6) of the additional properties, NBI had been relegated to the position of second lien holder, where NBI records and the public records at the Marion County Recorder's Office showed that NBI was the first lien holder on at least two of the properties.  Id. ¶ 30(g) (A-18).

(h) Detective Anderson falsely testified that Welton was stealing NBI's funds in June of 2002 or thereafter, where (i) NBI records showed that at least since 2001, Welton had not drawn or received any funds from his NBI line of credit, and (ii) Defendant Keely had reported to Detective Anderson that Welton was sending payment checks to NBI, which Defendant Keely was not cashing.  Id. ¶ 30(h) (A-18).

21. As a result of Detective Anderson's false testimony, Welton was arrested, processed, and was released on his own recognizance.  Id. ¶ 31 (A-18).  He was then criminally prosecuted.  Id. ¶ 32 (A-18 to A-19).

22. Even assuming that Detective Anderson was not aware of the falsity of her sworn statements when she filed them, she took no steps to correct those statements after their falsity became obvious to her during the course of litigation, including her own deposition.  Id. ¶ 33 (A-19).

23. After a trial on March 3, 2011, the Marion Superior Court entered its Findings of Fact and Conclusions of Law, finding Welton not guilty on both criminal counts.  Id. ¶ 34 (A-19).

9

24. Detective Anderson caused false criminal charges to be brought against Welton.  Id. ¶ 35 (A-19).

25. There was no probable cause for prosecuting Plaintiff under Ind. Code § 35-43-4-2 (theft) or Ind. Code § 35-43-5-8 (fraud on a financial institution).  Id. ¶ 36 (A-19).

26. The criminal proceeding against Welton was fundamentally unfair, because Detective Anderson had supplied false information to the prosecutor.  Id. ¶ 37 (A-19).

27. The actions and inactions of Detective Anderson, as described in ¶¶ 29-33 of the amended complaint (¶¶ 19-22, *supra*), were undertaken knowingly, willfully, and intentionally, id. ¶ 38 (A-19), and were malicious.  Id. ¶ 39 (A-19).

28.  As a direct result of the actions and inactions of Detective Anderson, Welton sustained economic loss in defending himself in the criminal proceeding, damages to his reputation and good name, and violations of his federal rights and liberties.  Id. ¶ 41 (A-19).

### (D)

29. In the beginning of 2007, Defendant Keely, acting individually and in his capacity as Vice President of Loan Administration and Workout Manager of NBI (collectively "NBI Defendants"), contacted Detective Anderson, in an effort to cause criminal prosecution to be initiated against Welton.  Id. ¶¶  43 & 57 (A-20 & A-22).

30. In order to secure criminal prosecution of Welton, NBI Defendants intentionally provided false, material facts to Detective Anderson, id. ¶¶  44 & 58 (A-20 & A-22), including the following:

(a)  NBI Defendants falsely reported that NBI had renewed Welton's line of credit in June of 2002.  Id. ¶¶  44(a) & 58(a) (A-20 & A-22).

(b) NBI Defendants falsely reported that in June of 2002, Welton had received a $750,000 line of credit from NBI. Id. ¶¶ 44(b) & 58(b) (A-20 & A-22).

(c) NBI Defendants falsely reported that in June of 2002, Welton was past due for renewal of his line of credit. Id. ¶¶ 44(c) & 58(c) (A-20 & A-22).

(d) NBI Defendants falsely reported that the collateral for Welton was short by $300,000. Id. ¶¶ 44(d) & 58(d) (A-20 & A-22).

(e) NBI Defendants falsely reported that in June of 2002, NBI had increased Welton's line of credit. Id. ¶¶ 44(e) & 58(e) (A-20 & A-22 to -23).

(f) NBI Defendants falsely reported that Welton had pledged the six (6) additional properties as collateral for his $750,000 "increased" line of credit. Id. ¶¶ 44(f) & 58(f) (A-20 & A-23).

(g) NBI Defendants falsely reported that on all six (6) of the additional properties NBI had been relegated to the position of second lien holder. Id. ¶¶ 44(g) & 58(g) (A-20 & A-23).

(h) NBI Defendants falsely reported that Welton had stolen funds from NBI bank in June of 2002 or thereafter, where (i) at least since 2001, Welton had not drawn or received any funds from his NBI line of credit, and (ii) for more than one year prior to charging Welton with theft, Welton had been sending checks to NBI on a monthly basis pursuant to his agreement with NBI's Vice President for Commercial Lending. Defendant Keely knew of the agreement with Welton. Mr. Boyewsky had been hand-delivering monthly checks from Welton to Defendant Keely. Defendant Keely simply put those checks in his drawer and carried on with the charade that Welton was stealing funds from NBI. Id. ¶¶ 44(h) & 58(h) (A-20 to -21 & A-23).

11

31. As a result of NBI Defendants' false reports to Detective Anderson, Welton was arrested, processed, and was released on his own recognizance.  Id. ¶¶ 45 & 59 (A-21 & A-23).   He was then criminally prosecuted.  Id. ¶¶ 46 & 60 (A-21 & A-23).

32. NBI Defendants caused false criminal charges to be brought against Welton.  Id. ¶¶ 47 & 61 (A-21 & A-23).

33. There was no probable cause for prosecuting Welton under Ind. Code § 35-43-4-2 (theft) or Ind. Code § 35-43-5-8 (fraud on a financial institution).  Id. ¶¶ 48 & 62 (A-21 & A-23).

34. During the criminal prosecution of Welton, NBI Defendants took no steps to correct their false reports to Detective Anderson.  Id. ¶¶ 49 & 63 (A-21 & A-23).

35. After a trial on March 3, 2011, the Marion Superior Court entered its Findings of Fact and Conclusions of Law, finding Welton not guilty on both criminal counts. Id. ¶¶ 50 & 64 (A-21 & A-24).

36. The criminal proceeding against Welton was fundamentally unfair, because NBI Defendants had supplied false information to the police and the prosecutor to cause the criminal prosecution of Welton.  Id. ¶¶ 51 & 65 (A-21 & A-24).

37. The actions and inactions of NBI Defendants, as described in ¶¶ 43-46 & 57-60 of the amended complaint (¶¶ 29-31, *supra*), were undertaken knowingly, willfully, and intentionally, id. ¶¶ 52 & 66 (A-21 & A-24), and were malicious.  Id. ¶¶ 53 & 67 (A-21 & A-24).

38. As a direct result of the actions and inactions of NBI Defendants, Welton sustained economic loss in defending himself in the criminal proceeding, damages to his reputation and good name, and violations of his state rights.  Id. ¶¶ 55 & 69 (A-22 & A-24).

**Summary of Argument**

This Court has long allowed claims of malicious prosecution under the due process clause of the fourteenth amendment, if a state does not provide a remedy for it.  Indiana recognizes malicious prosecution claims, but the Indiana Tort Claims Act completely immunizes police officers.  Thus, this Court has held that malicious prosecution claims against Indiana law enforcement officers are cognizable under the fourteenth amendment's due process clause.

Since the district court dismissed this case under Rule 12(b)(6), this Court must accept the complaint's well-pleaded allegations as true and draw all favorable inferences for Plaintiff Marshall Welton.  When so construed, Welton's amended complaint adequately states a malicious prosecution claim, under the fourteenth amendment, against Detective Anderson.  Welton's amended complaint states that Detective Anderson caused a criminal prosecution to be instituted against him, that Detective Anderson acted intentionally and maliciously, that Detective Anderson had no probable cause to institute criminal action against Welton and did so based on intentionally false information, and that the criminal action was terminated in favor of Welton.

In addition, the amended complaint specifically alleges that Detective Anderson intentionally and maliciously presented false evidence, as enumerated in ¶ 30 of the amended complaint (A-17 to -18), to the criminal court and the prosecutor, to cause Welton's criminal prosecution.  Thus, Detective Anderson's actions deprived Welton of liberty interests guaranteed by the fourteenth amendment's due process clause.

Finally, while acknowledging that this Court's numerous and recent precedents may preclude the recognition of an independent malicious prosecution claim under the fourth amendment, Welton respectfully invites the Court to re-examine its prior decisions and allow a construction

13

of the fourth amendment malicious prosecution claims that would embrace events occurring during the entire period from the initial arrest to the exoneration.

## Standard of Review

The standard of review for appeals of district court rulings under Rule 12(b)(6) is de novo. "We review the court's dismissal order de novo, accepting the complaint's well-pleaded allegations as true and drawing all favorable inferences for the plaintiff." Killingsworth v. HSBC Bank Nev., N.A., 507 F.3d 614, 618 (7th Cir. 2007) (citing Savory v. Lyons, 469 F.3d 667, 670 (7th Cir. 2006)); McCullah v. Gadert, 344 F.3d 655, 657 (7th Cir. 2003).

## Argument

**I.  Welton's malicious prosecution claim against Detective Anderson is cognizable under the fourteenth amendment's due process clause because Indiana Tort Claims Act absolutely immunizes police officers from liability under Indiana's common law tort of malicious prosecution.**

Ironically, on the day Welton filed his appeal, this Court decided that malicious prosecution claims against Indiana law enforcement officers are cognizable under the fourteenth amendment's due process clause, because Indiana Tort Claims Act absolutely immunizes police officers from liability under the Indiana's common law tort of malicious prosecution. Julian v. Hanna, 732 F.3d 842 (7th Cir. Oct. 21, 2013) (Posner, J.). See also Serino v. Hensley, 735 F.3d 588, 593 (7th Cir. Nov. 4, 2013) ("Indiana state law does *not* provide an adequate remedy for malicious prosecution"). [4]

---

[4] References here are to the procedural due process. This Court has already held that malicious prosecution claims are not cognizable under the substantive due process theory. Newsome v. McCabe, 256 F.3d 747, 751 (7th Cir. 2001); Alexander v. McKinney, 692 F.3d 553, 557 (7th Cir. 2012).

"[T]o preclude the federal remedy there must be an adequate state remedy." Julian, 732 F.3d at 845. "In its absence a plaintiff denied due process and deprived of liberty as a result of that denial can obtain relief under section 1983." Id. (rejecting that the mere existence of malicious prosecution under Indiana law precludes malicious prosecution claims against Indiana police officer under the fourteenth amendment, where Indiana absolutely immunizes its police officers).

This Court has long allowed claims of malicious prosecution under the due process clause of the fourteenth amendment, if the state does not provide a remedy for it. Newsome v. McCabe, 256 F.3d 747, 751 (7th Cir. 2001). "We've held that a federal claim for malicious prosecution is actionable only if the state fails to provide an adequate alternative, whether called a claim of malicious prosecution or something else." Julian, 732 F.3d at 845 (citing Parish v. City of Chicago, 594 F.3d 551, 552 (7th Cir. 2009); Bontkowski v. Smith, 305 F.3d 757, 760 (7th Cir. 2002); Newsome, 256 F.3d at 750–51). "[W]e will allow individuals to bring Section 1983 malicious prosecution suits when the relevant state's law does not provide them with a way to pursue such claims." Ray v. City of Chicago, 629 F.3d 660, 664 (7th Cir. 2011) (citations omitted), cert. denied, 2011 U.S. LEXIS 6673 (U.S., Oct. 3, 2011); Bielanski v. County of Kane, 550 F.3d 632, 638 (7th Cir. 2008) (malicious prosecution is not actionable under the due process clause, unless the state provides no remedy for malicious prosecution).

Indiana recognizes the tort of malicious prosecution, City of New Haven v. Reichhart, 748 N.E.2d 374, 378 (Ind. 2001), but a provision of Indiana Tort Claims Act (ITCA), Ind. Code §§ 34-13-3-0.1 et seq., absolutely immunizes police officers. Livingston v. Consolidated City of Indianapolis, 398 N.E.2d 1302 (Ind. App. 1972). This provision, commonly known as Indiana Law Enforcement Immunity, is found at Ind. Code § 34-13-3-3(8).[5] "[T]he Indiana Tort Claims

---

[5] The section provides that "A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from . . . [t]he adoption and enforcement of or failure

Act makes clear that there is no remedy against the individual employees for anything they did that was within the scope of their employment, construed very broadly." Julian, 732 F.3d at 848 (citing Ind. Code §§ 34-13-3-5(b) & (c)).

In Newsome, this Court held that the existence of a tort claim under state law "knocks out any constitutional theory of malicious prosecution . . . because the due process of law is afforded by the opportunity to pursue a claim in state court." 256 F.3d at 751 (emphasis added). The operative phrase there was "the opportunity to pursue." The test is not whether the remedy is written into the state laws, but whether the injured party has "the opportunity to pursue it." When a state writes the remedy into its law but absolutely immunizes state actors, there is no opportunity at all. The purported remedy fails the due process test, because "the relief afforded by the state remedy cannot be 'meaningless or non-existent.'" Belcher v. Norton, 497 F.3d 742, 751-752 (7th Cir. 2007) (quoting Easter House v. Felder, 910 F.2d 1387, 1406 (7th Cir. 1990)).

In Belcher, this Court examined the same provision of ITCA, i.e., the Law Enforcement Immunity provision, and held that the scope of the immunity under the ITCA's Law Enforcement Immunity provision goes too far and, thus, fails due process muster. In Belcher, this Court had to decide whether Indiana law provided an adequate state remedy under the due process clause for a citizen's claims against a law enforcement officer. 497 F.3d at 745-46. After examining the scope of the ITCA's Law Enforcement Immunity provision, id. at 751-53, the Court held:

> Because we conclude that [the defendant officer] is entitled to the broad statutory immunity afforded by ITCA, we also must conclude that the statute does not provide an adequate state law remedy to the plaintiffs. Relegating the plaintiffs to this state statutory scheme would deprive them of any meaningful avenue to seek redress for the deprivation that they claim to have suffered. Therefore, we must

---

to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment." Ind. Code § 34-13-3-3(8).

conclude that the district court erred in granting summary judgment in favor of the defendants on the plaintiffs' procedural due process claim.

Belcher, 497 F.3d at 753 (emphasis added).

Therefore, Welton's malicious prosecution claim against Detective Anderson is cognizable under the fourteenth amendment's due process clause, because Indiana Tort Claims Act absolutely immunizes police officers from liability under Indiana's common law tort of malicious prosecution.  "A state cannot be permitted to create blanket immunities from federal suits for violations of federal law (such as the Fourteenth Amendment's due process clause), as Indiana has done in this case."  Julian, 732 F.3d at 848.

## II.  Welton's amended complaint adequately states a malicious prosecution claim against Detective Anderson under the fourteenth amendment.

In their motion to dismiss (R. 35) and supporting and reply briefs (R. 36 & 59), Defendants solely argued that, as a matter of law, claims of malicious prosecution are not cognizable under the fourth or the fourteenth amendment.  Thus, the issue of the adequacy of Plaintiff's allegations was not briefed in the district court.  The district court *sua sponte* dismissed the case for inadequacy of allegations in the amended complaint.  (R. 62, at 8; A-10).

In dismissing Welton's amended complaint, the district court heavily relied on Tully v. Barada, 599 F.3d 591, 594 (7th Cir. 2010).  The court overlooked major allegations in the amended complaint and relied on only two allegations to conclude that they alone, or together, were not enough to state a malicious prosecution claim under the fourteenth amendment:

> Mr. Welton alleges that [Detective] Anderson's conduct caused him to be prosecuted without probable cause.  [Dkt. 34 at 7 ¶ 36.]  But Tully made clear that the Fourteenth Amendment's Procedural Due Process Clause does not grant him a right to avoid such prosecutions.  599 F.3d at 594.  To the extent that Mr. Welton's malicious prosecution claim is predicated on the notion that his "criminal proceeding . . . was fundamentally unfair," [dkt. 34 at 7 ¶ 37], this too is insufficient to implicate the Procedural Due Process Clause, at least

17

under the facts as alleged in the Amended Complaint. Like the plaintiff in
<u>Tully</u>, Mr. Welton was acquitted of the crimes with which he was charged,
[<u>id</u>. at 7 ¶ 34], and thus he "received procedural due process under the
Fourteenth Amendment when the state court system vindicated him," <u>Tully</u>,
599 F.3d at 595. . . .

Accordingly, the Court concludes that Mr. Welton's malicious prosecution
claims made pursuant to the Fourth and Fourteenth Amendments are not
cognizable under § 1983.

<u>Order</u> at 7-8 (A-9 to -10) (citing <u>Ray</u>, 629 F.3d at 664; <u>Penn v. Harris</u>, 296 F.3d 573, 576 (7th

Cir. 2002)) (footnote omitted).

First, prosecution without probable cause is only one of the elements of a malicious

prosecution claim.  <u>Tully</u> holds exactly that:  "We hold only that a plaintiff cannot initiate a §

1983 claim asserting only that he was summoned and prosecuted without probable cause."

<u>Tully</u>, 599 F.3d 595.  Second, an allegation that a plaintiff was acquitted does not defeat a

malicious prosecution claim.  Rather, it is one of the essential elements of a malicious

prosecution claim.  "Under both state and federal law a malicious prosecution claim does not

accrue until the criminal proceeding that gave rise to it ends in the claimant's favor."  <u>Julian</u>, 732

F.3d at 845.

In <u>Tully</u>, this Court affirmed the dismissal of the plaintiff's complaint because the plaintiff

had failed to allege malice.  "[G]iven that Tully alleged no facts to imply malice, his claim might

be characterized more aptly as one for 'negligent prosecution.'" <u>Id</u>.  The situation here is

diametrically different.  Welton's amended complaint alleges specific instances where Detective

Anderson intentionally presented false evidence to the criminal court and the prosecutor,

<u>Amended Complaint and Jury Demand</u> ¶¶ 30(a)-(h), at 5-6 (A-17 to -18), namely:

> (a) [Detective] Anderson falsely testified that NBI had renewed Mr. Welton's
> $750,000 line of credit in June of 2002, where in fact NBI had advised Mr.
> Welton that it was terminating his line of credit instead of renewing it.

(b) [Detective]Anderson falsely testified that in June of 2002, Mr. Welton had received a $750,000 line of credit from NBI, where in fact NBI records showed that in summer of 2002, NBI had terminated Mr. Welton's line of credit and had given him about 90 days to pay off the account.

(c) [Detective] Anderson falsely testified that in June of 2002, Mr. Welton was past due for renewal of his line of credit, where the records showed that by that time NBI had already decided not to renew Mr. Welton's line of credit.

(d) [Detective] Anderson falsely testified that in June of 2002, the collateral for Mr. Welton was short by $300,000, where NBI records showed that the line of credit was adequately collateralized.

(e) [Detective] Anderson falsely testified that in June [of] 2002, NBI had increased Mr. Welton's line of credit, where NBI records showed that NBI actually had substantially reduced Mr. Welton's line of credit by limiting it to its existing balance and was in process of terminating it.

(f) [Detective] Anderson falsely testified that in June of 2002, Mr. Welton had pledged the six (6) additional properties as collateral for his $750,000 "increased" line of credit, where NBI records showed that NBI did not increase Mr. Welton's line of credit and that NBI never granted any extension of the line of credit that would have utilized any of the six (6) additional properties as collateral.

(g) [Detective] Anderson falsely testified that on all six (6) of the additional properties NBI had been relegated to the position of second lien holder, where NBI records and the public records at the Marion County Recorder's Office showed that NBI was the first lien holder on at least two of the properties.

(h) [Detective] Anderson falsely testified that Mr. Welton was stealing NBI's funds in June of 2002 or thereafter, where (i) NBI records showed that at least since 2001, Mr. Welton had not drawn or received any funds from his NBI line of credit, and (ii) Defendant Keely had reported to [Detective] Anderson that Mr. Welton was sending payment checks to NBI, which Defendant Keely was not cashing.

Id.

Furthermore, the amended complaint alleges that Detective Anderson acted knowingly, willfully, and intentionally, id. ¶ 38, at 7 (A-19), and maliciously.  Id. ¶ 39 (A-19).  Yet, the

district court summarily dismissed Plaintiff's amended complaint, without considering, or referring to, any of these allegations.

The basic elements of malicious prosecution are: (1) the defendant caused a criminal action to be instituted against the plaintiff; (2) the defendant acted maliciously; (3) the defendant had no probable cause to institute the criminal action; and (4) the criminal action was terminated in the plaintiff's favor.  City of New Haven v. Reichhart, 748 N.E.2d 374, 378 (Ind. 2001).[6]  Welton's amended complaint addresses these elements by alleging that Detective Anderson caused a criminal prosecution be instituted against him, Amended Complaint and Jury Demand ¶ 29, at 5 (A-17); that Detective Anderson acted intentionally and maliciously, id. ¶¶ 30, & 38-39, at 5-7 (A-17 to -19); that Detective Anderson had no probable cause to institute criminal action against Welton and did so based on intentionally false information, id. ¶¶ 30-32 & 36, at 5-7 (A-17 to -19); and that the criminal action was terminated in favor of Welton.  Id. ¶ 34, at 7 (A-19).

In addition, the amended complaint specifically alleges that Detective Anderson intentionally and maliciously presented false evidence to the criminal court and the prosecutor, Amended Complaint and Jury Demand ¶¶ 30(a)-(h) & 38-39, at 5-7 (A-17 to -19).  Detective Anderson's actions deprived Welton of liberty interests guaranteed by the fourteenth amendment.  McCullah, 344 F.3d at 660-61 (surveying malicious prosecution cases and reversing dismissal of § 1983 claim against officers for providing false reports and testimony at preliminary hearing);  Ienco v. City of Chicago, 286 F.3d 994, 999 (7th Cir. 2002) (allowing plaintiff to amend his complaint

---

[6] "Under our cases, a § 1983 malicious prosecution claim [based on the fourth amendment] includes the following elements: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages."  Wilkins v. DeReyes, 528 F.3d 790, 799 (10th Cir. 2008) (citing Novitsky v. City of Aurora, 491 F.3d 1244, 1258 (10th Cir. 2007).  See also Julian, 732 F.3d at 846 ("elements of a federal malicious prosecution claim are the same whether the claim is based on the Fourth Amendment or on the due process clause of the Fourteenth Amendment").

and assert a due process claim that "the officers withheld information or evidence necessary for the fair and impartial trial guaranteed by the U.S. Constitution."); <u>Mahoney v. Kesery</u>, 976 F.2d 1054, 1061 (7th Cir. 1992) (police who falsify reports in a successful effort to persuade prosecutors to prosecute a suspect have violated suspect's civil rights and enjoy no immunity).

Finally, the amended complaint alleges that the criminal proceeding caused to be instituted by Detective Anderson was fundamentally unfair, <u>Amended Complaint and Jury Demand</u> ¶ 37, at 7 (A-19), because it was based on intentionally and maliciously false information. <u>Id</u>. ¶¶ 38-39, at 7 (A-19). And, as a result of Detective Anderson's actions, Welton "sustained economic loss in defending himself in the criminal proceeding, damages to his reputation and good name, and violations of his federal rights and liberties." <u>Id</u>. ¶ 41, at 7 (A-19). In addition, for a period of 1,373 days, from May 30, 2007, when he was charged, <u>id</u>. ¶ 29, at 5 (A-17), to March 3, 2011, when he was exonerated, <u>Id</u>. ¶ 34, at 7 (A-19), Welton's life hung in limbo.

> Limbo is not as bad as hell, but it's sufficiently bad that it can't be written off completely. Yet that is what the defendants ask us to do: recognize no remedy for malicious prosecution by Indiana public officers, leaving the defendant remediless if he manages to avoid jail or prison for *any* of the time during which he's being maliciously prosecuted.

<u>Julian</u>, 732 F.3d at 847.

Thus, Plaintiff's amended complaint adequately states a claim of malicious prosecution under the fourteenth amendment.

### III. Welton's malicious prosecution claim against Detective Anderson is cognizable under the fourth amendment.

Different circuits have defined the contours of the fourth amendment malicious prosecution claims differently.  The Seventh Circuit recognizes a fourth amendment malicious prosecution claim, but limits it to the initial unreasonable seizure.

The Supreme Court has never decided the contours of a fourth amendment malicious prosecution claim.  Wallace v. Kato, 549 U.S. 384, 390 n.2 (2007) (we have "never explored the contours of a Fourth Amendment malicious-prosecution suit under Section 1983"), reh'g denied, 549 U.S. 1362 (2007).  The Wallace Court recognized a "range of approaches" on such a claim in the lower courts, id. (citation omitted), did not foreclose the claim, and assumed without deciding that "such a claim is cognizable under § 1983." Id.

Almost all courts of appeal recognize fourth amendment malicious prosecution claims with varying scopes.  "We agree that we are obliged to . . . recognize a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment."  Thacker v. City of Columbus, 328 F.3d 244, 259 (6th Cir. 2003) (citing Darren v. City of Oak Park, 255 F.3d 301, 310 (6th Cir. 2001)); Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003)  ("Our Court has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983."), cert. denied, 2003 U.S. LEXIS 6257 (Oct. 6, 2003).[7]  The Fifth Circuit is the sole holdout.  Castellano v. Fragozo, 352 F.3d 939, 942 (5th Cir. 2003), cert. denied, 543 U.S. 808 (2004).

---

[7] Other circuits have reached similar results.  Harrington v. City of Nashua, 610 F.3d 24, 30 (1st Cir. 2010); Washington v. County of Rockland, 373 F.3d 310, 316 (2d Cir. 2004); Donahue v. Gavin, 280 F.3d 371, 380 (3d Cir. Pa. 2002); Lambert v. Williams, 223 F.3d 257, 261 (4th Cir. 2000), cert. denied, 531 U.S. 1130 (2001); Thacker, 328 F.3d at 259 (6th Cir.); Moran v. Clarke, 296 F.3d 638, 646 (8th Cir. 2002) (Supreme Court, in Albright, "did not rule out the possibility of bringing such claims under the auspices of the Fourth Amendment");  Poppell v. City of San Diego, 149 F.3d 951, 961 (9th Cir. 1998);

Some circuits hold that a fourth amendment malicious prosecution covers the entire period from the initial arrest to the exoneration.  See e.g., Wilkins, 528 F.3d at 799 (10th Cir.) (the original action [must terminate] in favor of the plaintiff); Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Circ. 2003) ("the criminal proceeding [must have] ended in plaintiff's favor"); opinion following remand, 430 F.3d 140 (3d Cir. 2005);  Lambert v. Williams, 223 F.3d 257, 261 (4th Cir. 2000), cert. denied, 531 U.S. 1130 (2001); Uboh v. Reno, 141 F.3d 1000 (11th Cir. 1998).  Under this construction, the plaintiff's claim becomes ripe when he is exonerated.

The Seventh Circuit has not rejected fourth amendment claims of malicious prosecution for injuries arising from a malicious arrest.  Johnson v. Saville, 575 F.3d 656, 663-64 (7th Cir. 2009) (Tinder, J.).  This Court, however, has limited a fourth amendment malicious prosecution claim to the event of initial arrest up to the time of indictment.  "Typically, the scope of a Fourth Amendment claim is limited up to the point of arraignment, at which point the prosecution is underway."  Bielanski, 550 F.3d at 638 (citing Wallace v. City of Chicago, 440 F.3d 421, 425 (7th Cir. 2006), cert. granted in part, 547 U.S. 1205 (2006), aff'd, 549 U.S. 384 (2007)).[8]  This Court's position on this point is in line with its longstanding holdings that arraignment is the defining moment when the protections of the fourth amendment end and the protections of the fourteenth amendment start.[9]

---

Wilkins v. DeReyes, 528 F.3d 790, 799 (10th Cir. 2008), mtn. granted in part, mtn. denied in part, 2008 U.S. Dist. LEXIS 78159 (D.N.M., Oct. 5, 2008), cert. denied, 2009 U.S. LEXIS 1749 (Mar. 2, 2009); Wood, 323 F.3d at 881 (11th Cir.).

[8] In this light, this Court has cautioned that "there is nothing but confusion to be gained by calling the legal theory 'malicious prosecution.'"  Newsome, 256 F.3d at 751.

[9] Lopez v. City of Chicago, 464 F.3d 711, 719 (7th Cir. 2006) (discussing the rights of arrestees, detainees, and convicts); Brokaw v. Mercer County, 235 F.3d 1000, 1018 n.14 (7th Cir. 2000) (after a probable cause hearing, the fourth amendment no longer applies); Luck v. Rovenstine, 168 F.3d 323, 326 (7th Cir. 1999) (the fourth amendment applies before the probable cause hearing and the fourteenth amendment applies afterwards); Reed v. City of Chicago, 77 F.3d 1049, 1052 (7th Cir. 1996) (an arrestee's seizure ends after the probable cause hearing).

The problem with this Court's construction of fourth amendment malicious prosecution claims is that it does not account for the restraint that a plaintiff's continued seizure, either in confinement or pursuant to bail, has on the plaintiff's life.  It does not account for the fact that sometimes the plaintiff may be arrested and released shortly thereafter, but be charged months or years later.  It also does not account for situations, as here, where the plaintiff discovers the falsity of allegations or the maliciousness of the officer long after the initial arrest—during the discovery or at trial.  Finally, this Court's construction would demand that plaintiffs, assuming they know of the underlying facts supporting their claims of malicious prosecution, pursue parallel litigations in separate courts.

The Supreme Court's decision, in Albright v. Oliver, 510 U.S. 266 (U.S. 1994), does not require such results.

> The Albright Court at no time explicitly stated that there is no separate constitutional claim for malicious prosecution based on the Fourth Amendment. In addition, by "noting the Fourth Amendment's relevance to the deprivations of liberty that go hand in hand with criminal prosecutions[,]" it does not appear that the Court was intimating that, in cases based on Fourth Amendment violations, a plaintiff could never have a separate Fourth Amendment claim of malicious prosecution. Albright, 510 U.S. at 274.

Darrah v. City of Oak Park, 255 F.3d 301, 310 (6th Cir. 2001).  That is why "malicious prosecution" should be construed as a constitutional wrong separate from "malicious arrest."

> In other words, the commencement of a criminal case by the institution of legal process marks the dividing line between claims of false imprisonment and claims of malicious prosecution, making those species of claims legally separate and distinct.  See Wilkins, 528 F.3d at 799 n.5; see also Fox v. DeSoto, 489 F.3d 227, 235 (6th Cir. 2007) (discussing Wallace's clarification of the distinction between claims of false imprisonment and those of malicious prosecution).

Harrington, 610 F.3d at 29.

As Judge Posner acknowledged in <u>Julian</u>:

> Most federal courts of appeals go further [than the Seventh Circuit], holding that section 1983 authorizes a federal claim of malicious prosecution regardless of what alternative remedy a state provides, at least if the plaintiff had been seized in the course of the malicious prosecution, which the cases believe justifies grounding the malicious prosecution claim in the Fourth Amendment, thus avoiding the <u>Parratt</u> [<u>v. Taylor</u>, 451 U.S. 527 (1981)] principle.

<u>Julian</u>, 732 F.3d at 846 (collecting cases).

Welton admits the numerosity and recency of this Court's opinions on this point, but respectfully invites the Court to consider re-examining this issue.[10]

---

[10] For the reasons stated in § II of the Argument, Welton's amended complaint adequately states a malicious prosecution claim against Detective Anderson under the fourth amendments, because "the elements of a federal malicious prosecution claim are the same whether the claim is based on the Fourth Amendment or on the due process clause of the Fourteenth Amendment."  <u>Julian</u>, 732 F.3d at 846.

**Conclusion**

For the foregoing reasons, Plaintiff-Appellant Welton respectfully requests that this Court reverse the district court's September 19, 2013 Order and Final Judgment Pursuant to Fed. R. Civ. Pro. 58 (R. 62 & 63) and remand this case for further proceedings.[11]


                                        Respectfully submitted,


                                        /s/Hamid R. Kashani
                                        Hamid R. Kashani, Attorney No. 11225-49
                                        445 N. Pennsylvania Street, Suite 288
                                        Indianapolis, Indiana  46204
                                        (317) 632-1000
                                        (317) 536-3312 (fax)
                                        HKashani@KashaniLaw.com

                                        *Counsel of Record*
                                        *Plaintiff-Appellant Marshall G. Welton*

---

[11] The reinstatement of Welton's constitutional claim against Detective Anderson under § 1983 "will necessarily require the district court to revisit the issue of supplemental jurisdiction [over Welton's claims against the NBI Defendants] on remand."  McCullah v. Gadert, 344 F.3d 655, 662 (7th Cir. 2003).

**Certificate of Compliance**

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because this brief contains 7,507 words, including all footnotes but excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 (SP3) in 12-point Times New Roman typeface in the body of the brief and in 11-point Times New Roman typeface in the footnotes.

/s/Hamid R. Kashani
Hamid R. Kashani, Attorney No. 11225-49

*Counsel of Record*
*Plaintiff-Appellant Marshall G. Welton*

**Certificate of Service**

On the date shown below, I served this document and its attached appendix, via the Court's electronic filing system, on the following: (1) Mr. R. Brock Jordan (*Brock@rubin-levin.net*); RUBIN & LEVIN, PC; 500 Marott Center; 342 Massachusetts Ave.; Indianapolis, IN 46204; and (2) Mr. R. Eric Sanders (*eric.sanders@indy.gov*); Assistant Corporation Counsel; OFFICE OF CORPORATION COUNSEL; 200 E. Washington Street, Room 1601; Indianapolis, Indiana 46204.

April 23, 2014

/s/Hamid R. Kashani
Hamid R. Kashani, Attorney No. 11225-49

*Counsel of Record*
*Plaintiff-Appellant Marshall G. Welton*

---
**Short Appendix**
---

Certificate under Cir. Rule 30(d) ......................................................................... A-ii

1.  Final Judgment Pursuant to Fed. R. Civ. Pro. 58, of September 19, 2013 (R. 63) .............. A-1

2.  Order of September 19, 2013 (R. 62) ................................................................... A-3

3.  Amended Complaint and Jury Demand (R. 34).................................................................. A-13

**Certificate under Cir. Rule 30(d)**

I certify that all of the materials required by Seventh Circuit Rules 30(a) and 30(b) are included in this Short Appendix of Plaintiff-Appellant Marshall G. Welton.

Respectfully submitted,

/s/Hamid R. Kashani
Hamid R. Kashani, Attorney No. 11225-49
445 N. Pennsylvania Street, Suite 288
Indianapolis, Indiana  46204
(317) 632-1000
(317) 536-3312 (fax)
HKashani@KashaniLaw.com

*Counsel of Record*
*Plaintiff-Appellant Marshall G. Welton*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MARSHALL G. WELTON,                          )
    *Plaintiff,*                          )
                              )
*vs.*                          )    1:13-cv-00355-JMS-MJD
                              )
SHANI J. ANDERSON, THE NATIONAL BANK     )
OF INDIANAPOLIS CORPORATION, AND          )
GEORGE E. KEELY,                          )
    *Defendants.*                          )

## FINAL JUDGMENT PURSUANT TO FED. R. CIV. PRO. 58

Consistent with the Court's Order entered this date, the Court now enters **FINAL JUDGMENT** in this matter.

Plaintiff Marshall G. Welton's claims against Defendant Shani J. Anderson are hereby **DISMISSED WITH PREJUDICE such that Plaintiff shall take nothing by way of his Complaint against Defendant Anderson**.

Mr. Welton's claims against Defendants The National Bank of Indianapolis Corporation and George E. Keely are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c).

District Judge:    09/19/2013

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Laura A. Briggs, Clerk

BY: _____

Deputy Clerk, U.S. District Court

- 1 -

**A-1**

**Distribution via ECF only**:

Hamid R. Kashani
HKashani@KashaniLaw.com

Cameron G. Starnes
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
cameron.starnes@indy.gov

Joseph L. Mulvey
RUBIN & LEVIN, PC
jmulvey@rubin-levin.net

R. Brock Jordan
RUBIN & LEVIN, PC
brock@rubin-levin.net

**A-2**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARSHALL G. WELTON, | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *vs.* | ) | 1:13-cv-00355-JMS-MJD |
| | ) | |
| SHANI J. ANDERSON, THE NATIONAL BANK | ) | |
| OF INDIANAPOLIS CORPORATION, AND | ) | |
| GEORGE E. KEELY, | ) | |
| *Defendants.* | ) | |

**<u>ORDER</u>**

Presently pending before the Court is Defendants Officer Shani Anderson, The National

Bank of Indianapolis ("<u>NBI</u>"), and George Keely's Motion to Dismiss Plaintiff Marshall G. Wel-

ton's Amended Complaint for lack of subject matter jurisdiction.[1]  [Dkt. 35.]  The Court, howev-

er, agrees with the parties that the motion is more properly treated as one to dismiss for failure to

state a claim upon which relief may be granted.  For the reasons that follow, and viewed as Fed-

eral Rule of Civil Procedure 12(b)(6) motion, the motion is granted.

**I.**
**STANDARD OF REVIEW**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks whether the

complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)).  For the purposes of that rule, the Court will ignore con-

---

[1] As discussed in more detail, the Amended Complaint invokes the Court's jurisdiction pursuant
to 42 U.S.C. § 1983.  The pending motion challenges the sufficiency of the complaint's allega-
tions to state a claim under that statute, and the Court has jurisdiction to resolve that issue.   The
defendants are correct that if the federal claim fails, the Court must address the propriety of
maintaining supplemental jurisdiction over the claims against Mr. Keely and the bank.  To that
extent the motion also raises a jurisdictional challenge.

**A-3**

clusory legal allegations. *Iqbal*, 556 U.S. at 678 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."). The Court will, however, give the complaint the benefit of reasonable inferences from all non-conclusory allegations. *See id.*

## II.
### BACKGROUND

The Court draws the factual background from Mr. Welton's Amended Complaint, taking his allegations as true as it is required to do pursuant to the standard of review. [*See* dkt. 34.] According to the Amended Complaint, Mr. Welton is an Indianapolis businessman who at all relevant times was engaged in the buying, selling, and renting of residential real estate. [*Id.* at 3 ¶ 10.] To facilitate his real estate business, Mr. Welton maintained a line of credit with NBI. [*Id.* at 3 ¶ 14.] In 2002, Mr. Welton was unable to make payments on his line of credit, [*id.* at 4 ¶ 21], but in 2006 reached an agreement with NBI to pay off his debt, [*id.* at 4 ¶ 23]. Although Mr. Welton sent monthly checks to NBI pursuant to their agreement, Mr. Keely, who was NBI's Vice President of Loan Administration, never cashed the checks or recorded them in NBI's records. [*Id.* at 5 ¶ 24-25.] Mr. Welton realized that NBI was not cashing his checks in September 2007, at which point he sent NBI a certified check in the amount of his uncashed checks. [*Id.* at 5 ¶ 26.]

On May 30, 2007, Officer Anderson submitted an affidavit in support of probable cause and an Information in Marion Superior Court charging Mr. Welton with two felonies: theft and fraud on a financial institution. [*Id.* at 5 ¶ 29.] According to Mr. Welton, several of Officer Anderson's statements were knowingly false. [*Id.* at 5-6 ¶ 30.] Mr. Welton further alleges that many of these false statements were provided to Officer Anderson by Mr. Keely. [*Id.* at 8 ¶ 44.]

**A-4**

Following a trial on March 3, 2011, Mr. Welton was found not guilty of both crimes. [*Id.* at 7 ¶ 34.] Mr. Welton alleges that Officer Anderson and Mr. Keely knowingly, willfully, and intentionally made these false statements so that he would be prosecuted despite the lack of probable cause supporting his arrest or prosecution. [*Id.* at 7 ¶ 38, 9 ¶ 52.]

Mr. Welton alleges that Officer Anderson's actions constituted malicious prosecution, denying him his rights under the Fourth and Fourteenth Amendments because he was prosecuted without probable cause and denied fundamentally fair criminal proceedings. [*Id.* at 7 ¶ 40.] He further alleges that Mr. Keely's actions constituted the tort of malicious prosecution under Indiana law. [*Id.* at 9 ¶ 54.] Because Mr. Keely undertook these actions as NBI's Vice President, Mr. Welton alleges that NBI is also responsible for the tort of malicious prosecution under Indiana law. [*Id.* at 10-11 ¶¶ 57-58, 12 ¶ 68.] Mr. Welton alleges that federal jurisdiction is proper against Officer Anderson because his constitutional claims are brought pursuant to 42 U.S.C. § 1983, [*id.* at 1 ¶ 1], and that federal jurisdiction is proper against Mr. Keely and NBI (collectively, "Bank Defendants") via supplemental jurisdiction because his malicious prosecution claim under Indiana law arises from the same nucleus of operative facts as his § 1983 claim, [*id.* at 1 ¶ 2].

### III.
#### DISCUSSION

#### A.  Defendants' Rule 12(b)(1) Motion is Treated as a Rule 12(b)(6) Motion

In Defendants' initial motion, filed pursuant to Rule 12(b)(1), they argue that this Court lacks subject matter jurisdiction to adjudicate Mr. Welton's claims. Specifically, Defendants contend that because malicious prosecution claims alleging violations of the Fourth and Fourteenth Amendments is not cognizable under 42 U.S.C. § 1983, the Court lacks jurisdiction over such claims. However, in their reply brief Defendants concede that their motion actually ad-

**A-5**

dresses the merits of Mr. Welton's § 1983 claims, rather than the Court's jurisdiction.  [Dkt. 59 at 1.]

The Court agrees with the parties that it has jurisdiction over Mr. Welton's § 1983 claims.  *See* 28 U.S.C. § 1331; *Bell v. Hood*, 327 U.S. 678, 682 (1946) ("[F]ailure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy."); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006) (criticizing "drive-by jurisdictional rulings" where "[s]ubject matter jurisdiction in federal-question cases is . . . erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief—a merits-related determination") (citations and quotation marks omitted).  In light of their concession, Defendants ask the Court to treat their motion as one made pursuant to Rule 12(b)(6), seeking dismissal of Mr. Welton's § 1983 claims.  [Dkt. 59 at 1.]  The Court agrees that this is the proper course.  *See Peckmann v. Thompson*, 966 F.2d 295, 297 (7th Cir. 1992) ("If a defendant's Rule 12(b)(1) motion is an indirect attack on the merits of the plaintiff's claim, the court may treat the motion as if it were a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.").

### B.  Malicious Prosecution Claims under § 1983

Pursuant to § 1983, Mr. Welton brings malicious prosecution claims against Officer Anderson under the Fourth and Fourteenth Amendments.  [Dkts. 34 at 7 ¶ 40; 51 at 2-10.]  However, Mr. Welton concedes that his Fourth Amendment malicious prosecution claim is foreclosed by Seventh Circuit precedent.  [Dkt. 51 at 7.]  The Court accepts his concession and acknowl-

**A-6**

edges his desire to preserve the issues raised regarding that claim for appeal.  Therefore, the

Court will **DISMISS** Mr. Welton's fourth amendment claim.

The Court will focus its discussion on whether Mr. Welton's malicious prosecution claim

predicated on a violation of his Fourteenth Amendment procedural due process rights is cogniza-

ble under § 1983.  The Seventh Circuit has made clear that "[f]ederal courts are rarely the appro-

priate forum for malicious prosecution claims."  *Ray v. City of Chicago*, 629 F.3d 660, 664 (7th

Cir. 2011).  This is because "individuals do not have a 'federal right not to be summoned into

court and prosecuted without probable cause, under either the Fourth Amendment or the Four-

teenth Amendment's Procedural Due Process Clause.'"  *Id.* (quoting *Tully v. Barada*, 599 F.3d

591, 594 (7th Cir. 2010)); *see Penn v. Harris*, 296 F.3d 573, 576 (7th Cir. 2002) ("[T]here is no

constitutional right not to be prosecuted without probable cause.") (citations and quotation marks

omitted).  However, individuals are allowed "to bring Section 1983 malicious prosecution suits

when the relevant state's law does not provide them with a way to pursue such claims."  *Ray*,

629 F.3d at 664; *see Bielanski v. Cnty. of Kane*, 550 F.3d 632, 638 (7th Cir. 2008) ("If [a] prose-

cution is . . . deemed malicious, it is not a constitutional tort unless the state provides no remedy

for malicious prosecution.") (citation omitted) (internal quotation marks omitted).  But should

state law permit a tort claim for malicious prosecution, this "*knocks out* any constitutional tort of

malicious prosecution, because, when a state-law remedy exists, . . . due process of law is afford-

ed by the opportunity to pursue a claim in state court."  *Newsome v. McCabe*, 256 F.3d 747, 751

(7th Cir. 2001) (emphasis in original).

The parties do not dispute that Indiana recognizes the tort of malicious prosecution.  *See,*

*e.g.*, *City of New Haven v. Reichart*, 748 N.E.2d 374, 378 (Ind. 2001) (recognizing a malicious

prosecution claim when the plaintiff "has been improperly subjected to legal process").  Argua-

**A-7**

bly, this is the end of the matter, as several decisions from this District have concluded that the availability of such a claim under Indiana law precludes the pursuit of a malicious prosecution claim under § 1983. *See, e.g.*, *Alexander v. FBI*, 2011 WL 4833091, at *3 (S.D. Ind. 2011); *Hawkins v. City of Rushville*, 2005 WL 2100068, at *2 (S.D. Ind. 2005). The Seventh Circuit has similarly ended its analysis upon recognition that Illinois law permits a tort claim for malicious prosecution. *See Ray*, 629 F.3d at 664 (holding that because "Illinois law recognizes tort claims for malicious prosecution . . . it was appropriate for the district court to refuse to hear [the plaintiff's § 1983 malicious prosecution] claims"); *Bielanski*, 550 F.3d at 638 (holding that the plaintiff's § 1983 malicious prosecution claim must be dismissed because "Illinois provides a remedy for malicious prosecution"). Notably, a panel of the Seventh Circuit rejected a malicious prosecution claim brought under § 1983 due to Indiana's recognition of the tort. *See Kim v. Ritter*, 493 Fed. Appx. 787, 790 (7th Cir. 2012) ("Because Indiana law recognizes a tort for malicious prosecution, § 1983 does not provide [the plaintiff] a federal remedy for prosecution without probable cause.").

Despite the weight of this authority, Mr. Welton contends that Indiana's formal recognition of the tort does not end the matter because the Indiana Tort Claims Act ("ITCA") provides immunity to police officers acting within the scope of their employment from malicious prosecution suits, *see* Ind. Code Ann. § 34-13-3-3; *Livingston v. Consolidated City of Indianapolis*, 398 N.E.2d 1302 (Ind. App. 1979), and thus Indiana law does not provide him an adequate remedy. [Dkt. 51 at 3-5.] In support of his position, Mr. Welton relies on *Belcher v. Norton*, 497 F.3d 742 (7th Cir. 2007), where the plaintiff brought a procedural due process claim against a police officer who wrongfully deprived her of her property. *Id.* at 750. The Seventh Circuit in *Belcher* held that the plaintiff could pursue a procedural due process claim stemming from this depriva-

**A-8**

tion of property because the ITCA provided the defendant police officer with immunity, and thus there was no adequate state law remedy.  Mr. Welton maintains that this case is analogous to *Belcher*.  Because Officer Anderson would most likely be entitled to immunity for her actions under the ITCA, he says, state law does not provide him any meaningful avenue for relief.  [Dkt. 51 at 3-4.]

Under the dictates of the Seventh Circuit's decision in *Tully*, however, the Court need not assess whether Indiana law recognizes the tort of malicious prosecution or whether Officer Anderson would be immune from such a claim under the ITCA until it first determines that the malicious prosecution claim pursued is viable in federal court.  Faced with a § 1983 malicious prosecution claim similar to Mr. Welton's, the Seventh Circuit first held that there is no right not to be "prosecuted without probable cause, under either the Fourth Amendment or the Fourteenth Amendment's Procedural Due Process Clause."  *Tully*, 599 F.3d at 594.  Having determined that "this type of 'malicious prosecution' claim is untenable in federal courts," the Seventh Circuit did not discuss whether Indiana recognized the tort of malicious prosecution and thus did not need to "decide whether Indiana provide[d] [the plaintiff] an adequate post-deprivation remedy despite that it also recognizes an affirmative immunity defense for governmental actors acting within the scope of their employment" under the ITCA.  *Id.* at 595.[2]  The same is true here.  Mr. Welton alleges that Officer Anderson's conduct caused him to be prosecuted without probable cause.  [Dkt. 34 at 7 ¶ 36.]  But *Tully* made clear that the Fourteenth Amendment's Procedural

---

[2] Even if the Court reached Mr. Welton's immunity argument, this argument is on tenuous footing given that the Seventh Circuit's analysis of § 1983 malicious prosecution claims has never proceeded beyond the question of whether the state formally recognizes the tort.  As detailed above, if the tort is formally recognized, the Seventh Circuit has consistently held that a § 1983 malicious prosecution claim is not available.  *See, e.g.*, *Ray*, 629 F.3d at 664 (Illinois law); *Bielanski*, 550 F.3d at 638 (Illinois law); *Kim*, 493 Fed. Appx. at 790 (Indiana law).  And, as stated above, the parties do not dispute that Indiana formally recognizes the tort of malicious prosecution.  *See Reichart*, 748 N.E.2d at 378.

**A-9**

Due Process Clause does not grant him a right to avoid such prosecutions.  599 F.3d at 594; *see*

*Ray*, 629 F.3d at 664; *Penn*, 296 F.3d at 576.  To the extent that Mr. Welton's malicious prosecu-

tion claim is predicated on the notion that his "criminal proceeding . . . was fundamentally un-

fair,"[3] [dkt. 34 at 7 ¶ 37], this too is insufficient to implicate the Procedural Due Process Clause,"

at least under the facts as alleged in the Amended Complaint.  Like the plaintiff in *Tully*, Mr.

Welton was acquitted of the crimes with which he was charged, [*id.* at 7 ¶ 34], and thus he "re-

ceived procedural due process under the Fourteenth Amendment when the state court system

vindicated him," *Tully*, 599 F.3d at 595.  In sum, because Mr. Welton has not stated a type of

malicious prosecution claim recognized by the Seventh Circuit, like *Tully*, this Court need not

reach his immunity argument.

Accordingly, the Court concludes that Mr. Welton's malicious prosecution claims made

pursuant to the Fourth and Fourteenth Amendments are not cognizable under § 1983.  In so hold-

ing, the Court aligns with several other Courts in this district that, albeit for differing reasons,

have held the same.  *See Julian v. Hanna*, 2013 WL 64516, at *4 (S.D. Ind. 2013); *Serino v.

Hensley*, 2012 WL 6025751, at *4 (S.D. Ind. 2012); *Hart v. Mannina*, 2012 WL 188055, at *6-7

(S.D. Ind. 2012); *Alexander*, 2011 WL 4833091, at *3; *Bishop v. City of Indianapolis*, 2008 WL

820188, at *13-14 (S.D. Ind. 2008); *Hawkins*, 2005 WL 2100068, at *2.

### C.  Remaining State Law Claims

Because the Court concludes that it must dismiss Mr. Welton's § 1983 claims against Of-

ficer Anderson, no federal claims remain in this litigation.  The Court must therefore assess

---

[3] The Court notes that Mr. Welton does not allege the violation of a specific due process right
independent of his malicious prosecution claim, such as a *Brady* violation.  *See, e.g.*, *Newsome*,
256 F.3d at 751-52 (holding that, although the plaintiff did not have a "constitutional claim
founded on malicious prosecution," he had a *Brady* claim); *see also Penn*, 296 F.3d at 576 (de-
clining to allow the plaintiff to recast his § 1983 malicious prosecution claim as the violation of a
specific constitutional right).

**A-10**

whether it should continue to exercise supplemental jurisdiction over Mr. Welton's state law claims against the Bank Defendants.

The Court ultimately has discretion whether to exercise supplemental jurisdiction over a plaintiff's state law claims. *Carlsbad Tech., Inc. v. HIF BIO, Inc.*, 556 U.S. 635, 639 (2009); *see* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173, (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). "[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *see Sharp Electronics Corp. v. Metropolitan Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009) ("Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.") (citation and quotation marks omitted).

The relevant factors all weigh in favor of the Court declining to exercise supplemental jurisdiction over Mr. Welton's state law claims against the Bank Defendants. The parties have yet to develop any arguments regarding those claims; indeed, the briefing for the instant motion solely addressed Mr. Welton's § 1983 claims against Officer Anderson. Thus, retaining jurisdiction over the state law claims would not promote judicial economy. Furthermore, comity favors Indiana courts resolving Mr. Welton's state law claims. Finally, the Court is not aware of any fairness or convenience concerns that militate toward retaining jurisdiction over the state law

**A-11**

claims as this early stage in the proceedings.  For these reasons, the Court, in its discretion, declines to continue exercising supplemental jurisdiction over Mr. Welton's state law claims.  *See* 28 U.S.C. § 1367(c)(3); *Groce*, 193 F.3d at 501.

## IV.
### CONCLUSION

For the reasons stated herein, the Court **GRANTS** Defendants' Motion to Dismiss.  [Dkt. 35.]  Mr. Welton's § 1983 claims against Officer Anderson are dismissed with prejudice, but his state law claims against the Bank Defendants over which the Court has declined to exercise supplemental jurisdiction are dismissed without prejudice.  Judgment will issue accordingly.


09/19/2013

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana




**Distribution via ECF only**:

Hamid R. Kashani
HKashani@KashaniLaw.com

Cameron G. Starnes
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
cameron.starnes@indy.gov

Joseph L. Mulvey
RUBIN & LEVIN, PC
jmulvey@rubin-levin.net

R. Brock Jordan
RUBIN & LEVIN, PC
brock@rubin-levin.net

**A-12**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| MARSHALL G. WELTON, | ) | |
| | ) | |
| Plaintiff, | ) | No. No. 1:13-cv-00355-JMS-MJD |
| | ) | |
| vs. | ) | |
| | ) | |
| OFFICER SHANI J. ANDERSON, individually, | ) | |
| THE NATIONAL BANK OF INDIANAPOLIS | ) | |
| CORPORATION, and GEORGE E. KEELY, | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT AND JURY DEMAND

Pursuant to the Court order of June 26, 2013, Plaintiff respectfully files this Amended

Complaint and Jury Demand.

### I.   Jurisdiction

1.   Pursuant to 28 U.S.C. §§ 1331 & 1343, this Court has jurisdiction to hear Plaintiff's

constitutional claims, brought under 42 U.S.C. § 1983, against Defendant Officer Shani J.

Anderson.  No state law claims are alleged against Officer Anderson.

2.   Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction to hear Plaintiff's

related state law claims, arising from the same nucleus of operative facts, against Defendants The

National Bank of Indianapolis Corporation and George E. Keely.  No federal claims are alleged

against The National Bank of Indianapolis Corporation or Mr. George E. Keely

3.   Pursuant to 28 U.S.C. § 1391, venue is proper in this Court and Division, because the

events giving rise to this action occurred in Indianapolis.

**A-13**

## II.  Parties

4.   Plaintiff Marshall G. Welton is an adult and a resident of Marion County, Indiana.

5.   Defendant Officer Shani J. Anderson is an adult and a police officer detective with the Indianapolis Metropolitan Police Department.  Upon information and belief, Defendant Anderson resides in the geographic area of the Indianapolis Division of this Court.

6.   Defendant The National Bank of Indianapolis Corporation is an Indiana corporation with its principal place of business located in Indianapolis, Indiana.  Defendant The National Bank of Indianapolis Corporation is a financial institution, which operates a bank under the name of National Bank of Indianapolis (NBI).  Any reference in this complaint to NBI is a reference to this defendant.

7.   Defendant George E. Keely is an adult.  Upon information and belief, Defendant Keely resides in the geographic area of the Indianapolis Division of this Court.  At all times material, Defendant Keely was a Vice President of Loan Administration and Workout Manager for The National Bank of Indianapolis Corporation.

8.   At all times material and with respect to the allegations raised in this complaint, Defendant Anderson acted under the color of state law.

9.   At all times material and with respect to the allegations raised in this complaint, Defendant Keely acted within the scope of his employment with NBI, pursuant to the directives of his superiors at NBI, and as an officer and agent of NBI.

**A-14**

### III.  Claims

#### (A)
#### Count I
#### Allegations against Defendant Officer Shani J. Anderson

10. Plaintiff Marshall G. Welton, 52, is an Indianapolis businessman.  He holds a Bachelor's degree in business, an MBA, and a J.D.  At all times relevant, Mr. Welton was engaged in buying, selling, and renting residential real estate.

11. To carry out his business, Mr. Welton used lines of credit from National Bank of Indianapolis (NBI) and First Indiana Bank (subsequently known as M&I Bank and currently known as BMO Harris Bank).  These lines of credit had to be collateralized.  Mr. Welton signed mortgages on the real estate to be accepted by the banks as collateral.

12. The banks required casualty insurance, an appraisal and a title search in order to support a mortgage, against which funds could be advanced.

13. Mr. Welton's contact point at NBI was Mr. Jason Boyewsky, NBI's Vice President of Commercial Lending.  Their business relationship began in 1994.

14. Mr. Welton had a line of credit at NBI which was generally renewed annually.  In April 2002, the balance on the $750,000.00 line of credit at NBI was approximately $564,000.00.

15. At any one time, a plethora of properties collateralized Mr. Welton's NBI line of credit.

16. As of April of 2002, Mr. Welton's line of credit at NBI was sufficiently collateralized.

17. In March of 2002, Mr. Welton met with NBI and presented additional properties to the bank as possible collateral, in preparation for what he believed would have been a routine extension of his credit line.  At the time, Mr. Welton had presented at least the following six (6) additional properties to the bank:

**A-15**

(a)  3208 E. 35th Street, Indianapolis, IN
(b)  2006 Drexel, Indianapolis, IN
(c)  1533 Standish, Indianapolis, IN
(d)  1817 Winfield, Indianapolis, IN
(e)  3751 Sadler, Indianapolis, IN
(f)  1821 DeQuincy, Indianapolis, IN

[hereinafter "additional properties"]

18. NBI did not extend Mr. Welton's line of credit.  Instead, NBI reduced the line of credit to

the balance owed, at $564,000, and gave Mr. Welton about 90 days to pay off his account.

19. Even though the NBI had not granted any extension of the line of credit that would have

utilized any of the six (6) additional properties as collateral, it went ahead and recorded

mortgages on all six (6) properties.

20. Some of the six (6) additional properties were among nearly 50 additional properties that

Mr. Welton presented towards the extension of his unrelated line of credit with First Indiana

Bank.

21. Sometime after April of 2002, Mr. Welton fell on hard times and was unable to make

payments on his lines of credit.  At the time, the NBI account carried a balance of approximately

$560,000.00, and the First Indiana Bank account carried a balance of approximately

$2,037,000.00, on a line of credit of approximately $5,000,000.00.

22. At least since sometime in 2001, Mr. Welton had never drawn or received any funds from

his lines of credit at either NBI or First Indiana Bank.

23. In early 2006, Mr. Welton met with Mr. Boyewsky, NBI's Vice President of Commercial

Lending.  Mr. Welton stated that he was recovering from his financial hardship and wanted to

pay off his debt to NBI.  They reached an agreement, requiring Mr. Welton to pay NBI at least

$3,000.00 a month.

**A-16**

24. Thereafter until August of 2007, Mr. Welton regularly sent monthly checks of at least $3,000.00 each to Mr. Boyewsky, NBI's Vice President of Commercial Lending.  Mr. Boyewsky delivered each and every check to Defendant Keely, NBI's Vice President of Loan Administration.

25. Defendant Keely never cashed Mr. Welton' checks, did not record them on NBI's records, and did not reduce the balance on Mr. Welton's account.  Instead he placed them in a drawer in his desk.

26. After realizing NBI was not cashing his checks, on September 9, 2007, Mr. Welton sent a certified check to NBI for the amount of $80,000.00 to replace his uncashed checks and to prepay additional monthly payments to NBI.

27.  Meanwhile, NBI had previously brought a civil claim against Plaintiff in an Indiana state court, seeking recovery of the loans which had been made to Plaintiff on the basis of his line of credit with NBI.  The law firm of Rubin & Levin represented NBI in that matter.  Mr. Jordan, one of NBI's attorneys here, was also one of NBI's attorneys in the state court case.

28. By early 2008, to resolve NBI's civil claim in state court, Mr. Welton had fully paid NBI's line of credit together with interest, expenses, and substantial attorney's fees, for a total of nearly seven hundred thousand dollars $700,000.00.

29. On May 30, 2007, Defendant Anderson signed, under the penalties for perjury, an Affidavit in Support of Probable Cause and an Information charging Mr. Welton with one count of theft, under Ind. Code § 35-43-4-2, and one count of fraud on a financial institution, under Ind. Code § 35-43-5-8, both as Class C felonies.  Both documents were filed with Marion Superior Court, Criminal Division, Room G04, under cause Number 49G04-0705-FC-097329.

30. In her probable cause affidavit and the charging information, Defendant Anderson

**A-17**

intentionally presented false, material facts:

(a) Defendant Anderson falsely testified that NBI had renewed Mr. Welton's
$750,000 line of credit in June of 2002, where in fact NBI had advised Mr.
Welton that it was terminating his line of credit instead of renewing it.

(b) Defendant Anderson falsely testified that in June of 2002, Mr. Welton had
received a $750,000 line of credit from NBI, where in fact NBI records showed
that in summer of 2002, NBI had terminated Mr. Welton's line of credit and had
given him about 90 days to pay off the account.

(c) Defendant Anderson falsely testified that in June of 2002, Mr. Welton was past
due for renewal of his line of credit, where the records showed that by that time
NBI had already decided not to renew Mr. Welton's line of credit.

(d) Defendant Anderson falsely testified that in June of 2002, the collateral for Mr.
Welton was short by $300,000, where NBI records showed that the line of credit
was adequately collateralized.

(e) Defendant Anderson falsely testified that in June 2002, NBI had increased Mr.
Welton's line of credit, where NBI records showed that NBI actually had
substantially reduced Mr. Welton's line of credit by limiting it to its existing
balance and was in process of terminating it.

(f) Defendant Anderson falsely testified that in June of 2002, Mr. Welton had
pledged the six (6) additional properties as collateral for his $750,000 "increased"
line of credit, where NBI records showed that NBI did not increase Mr. Welton's
line of credit and that NBI never granted any extension of the line of credit that
would have utilized any of the six (6) additional properties as collateral.

(g) Defendant Anderson falsely testified that on all six (6) of the additional properties
NBI had been relegated to the position of second lien holder, where NBI records
and the public records at the Marion County Recorder's Office showed that NBI
was the first lien holder on at least two of the properties.

(h) Defendant Anderson falsely testified that Mr. Welton was stealing NBI's funds in
June of 2002 or thereafter, where (i) NBI records showed that at least since 2001,
Mr. Welton had not drawn or received any funds from his NBI line of credit, and
(ii) Defendant Keely had reported to Defendant Anderson that Mr. Welton was
sending payment checks to NBI, which Defendant Keely was not cashing.

31. As a result of Defendant Anderson's false testimony, Mr. Welton was arrested,

processed, and was released on his own recognizance.

32. As a result of Defendant Anderson's false testimony, Mr. Welton was criminally

**A-18**

prosecuted.

33. Even assuming that Defendant Anderson was not aware of the falsity of her sworn statements when she filed them, she took no steps to correct those statements after their falsity became obvious to her during the course of litigation, including her own deposition.

34. After a trial on March 3, 2011, the Marion Superior Court entered its Findings of Fact and Conclusions of Law, finding Mr. Welton not guilty on both criminal counts.

35. Defendant Anderson caused false criminal charges to be brought against Plaintiff.

36. There was no probable cause for prosecuting Plaintiff under Ind. Code § 35-43-4-2 (theft) or Ind. Code § 35-43-5-8 (fraud on a financial institution).

37. The criminal proceeding against Mr. Welton was fundamentally unfair, because Officer Anderson had supplied false information to the prosecutor.

38. The actions and inactions of Defendant Anderson, as described in Paragraphs 29-33, were undertaken knowingly, willfully, and intentionally.

39. The actions and inactions of Defendant Anderson, as described in Paragraphs 29-33, were malicious.

40.  Defendant Anderson's actions and inactions constituted unreasonable and malicious prosecution of Mr. Welton and denied him due process, in violation of the fourth and fourteenth amendments to the United States Constitution.

41. As a direct result of the actions and inactions of Defendant Anderson, Plaintiff sustained economic loss in defending himself in the criminal proceeding, damages to his reputation and good name, and violations of his federal rights and liberties.

**A-19**

**(B)**
**Count II**
**Allegations against Defendant George E. Keely**

42.  Plaintiff hereby adopts by reference Paragraphs 10-28 of this Amended Complaint and

Jury Demand, as if they were restated herein in their entirety.

43. In the beginning of 2007, Defendant Keely, acting individually and in his capacity as

Vice President of Loan Administration and Workout Manager of NBI, contacted Defendant

Anderson, in an effort to cause criminal prosecution to be initiated against Mr. Welton.

44. In order to secure criminal prosecution of Mr. Welton, Defendant Keely intentionally

provided false, material facts to Defendant Anderson, including the following:

    (a)  Defendant Keely falsely reported that NBI had renewed Mr. Welton's line of credit in June of 2002.

    (b)  Defendant Keely falsely reported that in June of 2002, Mr. Welton had received a $750,000 line of credit from NBI.

    (c)  Defendant Keely falsely reported that in June of 2002, Mr. Welton was past due for renewal of his line of credit.

    (d)  Defendant Keely falsely reported that the collateral for Mr. Welton was short by $300,000.

    (e)  Defendant Keely falsely reported that in June 2002, NBI had increased Mr. Welton's line of credit.

    (f)  Defendant Keely falsely reported that Mr. Welton had pledged the six (6) additional properties as collateral for his $750,000 "increased" line of credit.

    (g)  Defendant Keely falsely reported that on all six (6) of the additional properties NBI had been relegated to the position of second lien holder.

    (h)  Defendant Keely falsely reported that Mr. Welton had stolen funds from NBI bank in June 2002 or thereafter, where (i) at least since 2001, Mr. Welton had not drawn or received any funds from his NBI line of credit, and (ii) for more than one year prior to charging Mr. Welton with theft, Mr. Welton had been sending checks to NBI on a monthly basis pursuant to his agreement with NBI's Vice President for Commercial Lending.  Defendant Keely knew of Mr. Boyewsky's agreement with Mr. Welton.

**A-20**

Mr. Boyewsky had been hand-delivering monthly checks from Mr. Welton to Defendant Keely.  Defendant Keely simply put those checks in his drawer, and Defendant Keely carried on with the charade that Mr. Welton was stealing funds from NBI.

45. As a result of Defendant Keely's false reports to Officer Anderson, Mr. Welton was arrested, processed, and was released on his own recognizance.

46. As a result of Defendant Keely's false reports to Officer Anderson, Mr. Welton was criminally prosecuted.

47. Defendant Keely caused false criminal charges to be brought against Plaintiff.

48. There was no probable cause for prosecuting Plaintiff under Ind. Code § 35-43-4-2 (theft) or Ind. Code § 35-43-5-8 (fraud on a financial institution).

49. During the criminal prosecution of Mr. Welton, Defendant Keely took no steps to correct his false reports to Officer Anderson.

50. After a trial on March 3, 2011, the Marion Superior Court entered its Findings of Fact and Conclusions of Law, finding Mr. Welton not guilty on both criminal counts.

51. The criminal proceeding against Mr. Welton was fundamentally unfair, because Defendant Keely had supplied false information to the police and the prosecutor to cause the criminal prosecution of Mr. Welton.

52. The actions and inactions of Defendant Keely, as described in Paragraphs 43-46, were undertaken knowingly, willfully, and intentionally.

53. The actions and inactions of Defendant Keely, as described in Paragraphs 43-46, were malicious.

54.  Defendant Keely's actions and inactions constituted the tort of malicious prosecution of Mr. Welton under Indiana state law.

**A-21**

55. As a direct result of the actions and inactions of Defendant Keely, Plaintiff sustained economic loss in defending himself in the criminal proceeding, damages to his reputation and good name, and violations of his state rights.

### (C)
### Count III
### Allegations against Defendant The National Bank of Indianapolis Corporation (NBI)

56.  Plaintiff hereby adopts by reference Paragraphs 10-28 of this Amended Complaint and Jury Demand, as if they were restated herein in their entirety.

57. In the beginning of 2007, NBI, through Mr. Keely, NBI's Vice President of Loan Administration and  Workout Manager, contacted Defendant Anderson, in an effort to cause criminal prosecution to be initiated against Mr. Welton.

58. In order to secure criminal prosecution of Mr. Welton, Defendant NBI, through its Vice President of Loan Administration and Workout Manager, intentionally provided false, material facts to Defendant Anderson, including the following:

(a) Defendant NBI, through its Vice President of Loan Administration and  Workout Manager, falsely reported that NBI had renewed Mr. Welton's line of credit in June of 2002.

(b) Defendant NBI, through its Vice President of Loan Administration and  Workout Manager, falsely reported that in June of 2002, Mr. Welton had received a $750,000 line of credit from NBI.

(c) Defendant NBI, through its Vice President of Loan Administration and  Workout Manager, falsely reported that in June of 2002, Mr. Welton was past due for renewal of his line of credit.

(d) Defendant NBI, through its Vice President of Loan Administration and  Workout Manager, falsely reported that the collateral for Mr. Welton was short by $300,000.

(e) Defendant NBI, through its Vice President of Loan Administration and  Workout

**A-22**

Manager, falsely reported that in June 2002, NBI had increased Mr. Welton's line of credit.

(f) Defendant NBI, through its Vice President of Loan Administration and  Workout Manager, falsely reported that Mr. Welton had pledged the six (6) additional properties as collateral for his $750,000 "increased" line of credit.

(g) Defendant NBI, through its Vice President of Loan Administration and  Workout Manager, falsely reported that on all six (6) of the additional properties NBI had been relegated to the position of second lien holder.

(h) Defendant NBI, through its Vice President of Loan Administration and  Workout Manager, falsely reported that Mr. Welton had stolen funds from NBI bank in June 2002 or thereafter, where (i) at least since 2001, Mr. Welton had not drawn or received any funds from his NBI line of credit, and (ii) for more than one year prior to charging Mr. Welton with theft, Mr. Welton had been sending checks to NBI on a monthly basis pursuant to his agreement with NBI's Vice President for Commercial Lending.  Defendant NBI knew of Mr. Boyewsky's agreement with Mr. Welton.  Mr. Boyewsky had been hand-delivering monthly checks from Mr. Welton to Defendant Keely.  Defendant Keely, acting on behalf of NBI as its Vice President of Loan Administration and  Workout Manager, simply put those checks in his drawer, and carried on with the charade that Mr. Welton was stealing funds from NBI.

59.  As a result of Defendant NBI's false reports to Officer Anderson, Mr. Welton was arrested, processed, and was released on his own recognizance.

60.  As a result of Defendant NBI's false reports to Officer Anderson, Mr. Welton was criminally prosecuted.

61.  Defendant NBI, through its Vice President of Loan Administration and Workout Manager, caused false criminal charges to be brought against Plaintiff.

62. There was no probable cause for prosecuting Plaintiff under Ind. Code § 35-43-4-2 (theft) or Ind. Code § 35-43-5-8 (fraud on a financial institution).

63. During the criminal prosecution of Mr. Welton, Defendant NBI took no steps to correct its false reports to Officer Anderson.

**A-23**

64. After a trial on March 3, 2011, the Marion Superior Court entered its Findings of Fact and Conclusions of Law, finding Mr. Welton not guilty on both criminal counts.

65. The criminal proceeding against Mr. Welton was fundamentally unfair, because Defendant NBI, through its Vice President of Loan Administration and  Workout Manager, had supplied false information to the police and the prosecutor to cause the criminal prosecution of Mr. Welton.

66. The actions and inactions of Defendant NBI, through its Vice President of Loan Administration and  Workout Manager, as described in Paragraphs 57-60, were undertaken knowingly, willfully, and intentionally.

67. The actions and inactions of Defendant NBI, through its Vice President of Loan Administration and  Workout Manager, as described in Paragraphs 57-60, were malicious.

68.  Defendant NBI's actions and inactions constituted the tort of malicious prosecution of Mr. Welton under Indiana state law.

69. As a direct result of the actions and inactions of Defendant NBI, Plaintiff sustained economic loss in defending himself in the criminal proceeding, damages to his reputation and good name, and violations of his state rights.

**A-24**

## IV.  Demand for Relief

70. Plaintiff requests that the Court grant him a trial by jury.

71. Plaintiff requests that the Court grant him compensatory damages, punitive damages,

costs and expenses, attorney's fees, and all other just and reasonable relief, against Defendant

Officer Anderson.

72. Plaintiff requests that the Court grant him compensatory damages, punitive damages,

costs and expenses, and all other just and reasonable relief, against Defendants National Bank of

Indianapolis and George E. Keely.


Respectfully submitted,


/s/Hamid R. Kashani
Hamid R. Kashani, Attorney No. 11225-49
445 N. Pennsylvania Street, Suite 888
Indianapolis, Indiana  46204
(317) 632-1000
(317) 536-3312 (fax)
HKashani@KashaniLaw.com

*Attorney for Plaintiff*


### Certificate of Service

On the date shown below, I served this document via the Court's electronic filing system or First Class Mail, postage prepaid, on the following: (1) Mr. Joseph L. Mulvey and Mr. R. Brock Jordan; RUBIN & LEVIN, PC; 500 Marott Center; 342 Massachusetts Ave.; Indianapolis, IN 46204; and (2) Mr. Cameron G. Starnes; Assistant Corporation Counsel; Office of Corporation Counsel; 200 E. Washington Street, Room 1601; Indianapolis, Indiana 46204.


July 10, 2013

/s/Hamid R. Kashani
Hamid R. Kashani, Attorney No. 11225-49

**A-25**